The next item on our calendar is Wynn, Williams, Guzman, Otero, and Fulton versus the New York City Housing Authority and Local 237. I am informed just this morning that New York City Housing Authority is on submission and I have increased the time available to Local 237 in the hopes that they might also argue as well as they can on behalf of NYCHA, since they're not going to be here. Good, thanks. Morning Your Honors. If it may please the Court, my name is Lino Estra and I'm here appearing on behalf of appellant plaintiffs in this case. In this case, we have appealed a summary judgment motion that was granted to both defendants. And both defendants are the employer as well as the union that my clients belong to. As initial matter, I have to admit that in about 25 years, this was the most challenging case that walked into my office as a sole practitioner. However, I also feel that it is the most worthy, one of the most worthy cases that walked in because we have, in addition to my clients, anywhere over the relevant time period between 2010 until 2016, to date and still ongoing as far as we're concerned. My clients who have been performing the work of plasterer helpers, also known as plasterer tenders in the private sector, have been discounted in their salary, or as they would feel, been cheated in their salary. To the- Can I interrupt? Sure. One question about the structure of the civil service law and how it interacts with the classification of workers. So everyone takes for granted that only workers in the competitive class under section 44 of the New York civil service law are entitled to prevailing wages. That's your view? Yes, I agree with that, Your Honor. Can I have a citation to that? I couldn't find that. I understand that, Your Honor. But the totality of the evidence that were adduced during discovery clearly state that only the controller of the city of New York can determine whether a certain skill is prevailing wages or not. And so it's skill based? It's not based on whether it's labor or exempt or competitive? That's correct, Your Honor. That's our position, that it's a trade that is equivalent to the skill trades in the private sector. For example, you don't have to be a civil servant, even as a plasterer, to get the prevailing wages. You could be appointed, and that was conceded by Mr. Mersennick during discovery. You can be appointed provisionally, which means you didn't take civil service test. You didn't come off a civil service list. And therefore, if you do the work of the same stuff or significant material as the private sector, you should be entitled to make that kind of money. But once you're appointed a plasterer or helper, then you're in the competitive class, correct? Well, no, Your Honor, not competitive class, because the competitive class means that you have to take a test. You could get into the so-called competitive class without taking the test? Provisionally, yes, Your Honor, it happens all the time. How long would that last? Well, it's as long until such time as if it's a civil service position, until such time- Until an exam is given. That's correct. In order to be in the competitive class, you have to ultimately take an exam. And then you are eligible for prevailing wages. Is that correct? No, Your Honor. Our position is as long as you do the same work or significant- It's your position. Yes. Is that the law? As far as I'm concerned, yes, Your Honor. If you don't pass that exam. Sorry? Even if you don't pass that exam? No, if there is an exam that you're supposed to take, right? Then you have to take the exam. If you pass it, then you're placed on a list. And they can go and exhaust that list. But if they don't have enough people who passed it, they still can continue to hire and employ provisional people. But you have to be, what you've just described defines the competitive class. That is, there has to be an exam eventually, and you have to pass it eventually, correct? If that's what the agency wants. In this case, what they decided to do as per their agreement of April 9, 2010, was that there will be assessments given. Six months assessment. Assessment like an exam? For their competency, that's correct, Your Honor. So if they pass the assessment, they join the competitive class? No, they would be entitled based on that contract, based on that agreement to the prevailing wages that the private sector would be paying, which was determined, which- Can you give me a citation to the contract that says if they pass the assessment, they would be entitled to competitive wages? because that's what I'm having difficulty. Yeah, it's prevailing wages, not competitive wages. Prevailing wages. Well, yes. I mean, that's the totality of the evidence. Specifically, the testimony of Mr. Mercenic, Mr. Floyd, who's the union president, their agents. That once they pass those two assessment tests within the first year, then they will be making the prevailing wages. The controller had already decided in 1998 that Mason Tenders can get prevailing wages. It's in the record. In 2000, he also, I believe it was Mr. Hevesi at the time, that's what I say, he also determined that plasterer helpers also will get prevailing wages. And there is no question that what my clients did, have been doing since at least 4-9-2010, is the equivalent of what the private sector has as plasterer helpers or plasterer tenders. And the only reason your clients are not getting prevailing wage is because they haven't been recognized as plasterer helpers, is that it? No, we're not saying that. We're saying that at one point, there is in the record many documentations, official documentations that were attached or are attached to Mr. Wynn's declarations that say that they are plasterer helpers. What we're saying is that the housing authority- Functionally, they're plasterer helpers. Exactly, Your Honor. And so if you function as a plasterer helper, then you should get paid as a plasterer helper. If you- Oh, go ahead. Go ahead. Have you identified any evidence giving rise to an inference of discriminatory intent in NYCHA, other than the disparate treatment? Oh, yes, Your Honor. What is your strongest evidence in that regard? I have a few of them, Your Honor. And so what happens is they treated the mason helpers more preferentially than they did my clients. Could you just point to a document or a piece of evidence, an affidavit that suggests there was discriminatory intent, racially discriminatory intent, because I understood that your main argument was that the pay differential was because NYCHA was discriminating against African American and Hispanic workers. Right. And I saw, as Judge Sack and the various classifications of workers to understand how the classifications and wage scales would have come out. And so I'm asking you if there's anything other than the wage scale that suggests that the disparate treatment was because of discriminatory reasons. Well, Your Honor, I believe that under McDonnell Douglas, they have proved their case, and I'll be more than happy to go through that. Prima facie case. Prima facie case. And because this is a pattern and practice under 1981, 1983, if I may. In Patterson versus McLean Credit Union, for not- You know, I'm familiar with the law. Yes, yes, okay. I just wanted you to point to be something in the record suggesting that there was an intentionality, a discriminatory intentionality about this, because I understood that you had disclaimed a disparate impact. That you hadn't been arguing disparate impact and didn't do so until you eventually got to the EEOC after this claim had been brought. Maybe a misunderstanding. Yes, yes, you have, Your Honor. So what happened here is under Title VII, as you know, you have to go through the administrative proceedings, the EEOC. My clients have filed their EEOC contemporaneous with their 1981, 1983 claim. There was a statute of limitation issue, so I had to worry about that. And so, but because it's a city agent, so they filed it twice. They filed it against the city agency, and they filed it against the union in a timely fashion with the EEOC. Because it's against the city agency, we have asked for a right to sue letter. It has to be referred to Washington D.C., and the Justice Department in Washington D.C. has to approve the right to sue letter with regard to the agents. They haven't done that yet? They have, yeah, I've requested it, they haven't done it. Still pending. Still pending. However, they gave us the right to sue letter with regard to the union, because they're not a governmental agency, and I had no choice but to file at the lower court, so I won't be sued for malpractice, right, to file it, and I filed it. And it is held in abeyance, as I submitted in my brief, pending whatever the outcome here. The difference is, that's a Title VII, it's a disparate impact. Under 1981, I wish I could bring disparate impact, but I couldn't. You can only do disparate treatment, and that's why it wasn't there. So, let's go back to the question. Yes, yes. Judge Carney asked. Yes. What evidence do you have of discriminatory intent? The statistical showing, as this court, as well as the US Supreme Court in Hazelwood School District versus United States, said that in presenting a prima facie case of policy, parent, or practice, which is what we're doing, of intentional discrimination against the protected class. While instances of discrimination against particular police are relevant to show a policy of intentional discrimination, they are not required. No, but after, assuming that you made a prima facie case. Yes. Which opposing counsel do not concede. Assuming you made a prima facie case, they come forward and they say, there weren't enough people that passed the assessment, and we did all we could. But they weren't the same. Caretakers are not the same as plaster helpers, and they explain why. Then you are required under our burden shifting analysis to come forward and say this is pretextual, and they really were discriminating against the caretaker's P. I totally agree with you, your honor, and that's what I'm going to submit to you, what the pretextual is. And not only that, but when- What is it? I'm asking you now. For one thing, your honor, they saying that the program didn't work, right? We saying that is a pretextual reason they given. Why? Because we feel that they speaking from both sides of their mouth. Remember, there were two goals for that April 2010 agreement. One is to get them added duties, mandated added duties, and that is not contested, to get prevailing wages, our position, of course, they contesting that, and the other one is to reduce the time to become a plasterer from 12 years to five years. They say the program didn't work, yet they brag about the fact that within three to four years, they promoted from the same caretaker piece or plasterer helpers, 34, 17 blacks and 17 Hispanic individuals. We also submitted, based on personal knowledge by agents, opponents. One is a shop steward, Mr. Antoine Edgeman, and the other one was a field supervisor of the housing authority. And if you check the record as a whole, you'll see that the deputy chairperson at one point, Miss Rivers, told me, invited me to find out what exactly a plasterer helper does from the field supervisor, and that's exactly what I provided the court with, and that would be Mr. LaFleur. He's- Your argument is that caretakers P perform the identical task as a plasterer's helper? Significantly identical. Significantly identical. Yes. And that plasterer helpers are to plasterers as mason helpers are to masons. Yes, and what you will find most interesting, your honor, is when Mr. Mersennick did the research, and he did it based on the Mason Tenders Collective Bargaining Agreement of, I believe, between 2002 and 2005, which continued. You will see that the Mason Tenders in Article 4, Section 4, in the private sector, actually do what plasterers do. They actually function as what plasterers do in the private sector. It's in the record. Isn't it a question of inside or outside on masons versus plasterers? In the housing authority only, your honor. However, I'm sorry, go ahead. Your time has expired, so let me let you sum up, because you have reserved three minutes for rebuttal. Okay. Tell us what you want us to know about your argument. Well, what I want for this court to do is to agree with our position that there are too many issues of facts, that based on the tality of circumstances, and I believe Walsh versus Nystra, which is a case that is cited by Appellee Union, is most on point. And that was Second Circuit from 2016, I believe it's in footnote five of their brief. In that case, there was a tile, there were five positions available, they interviewed four men and one woman. The district court found that there wasn't enough evidence for a pretext or prima facie sex discrimination. This court reversed them, saying that, as we believe, the district court took whatever issues of facts, parsed them, and did not consider the totality of the circumstances and the evidence in reaching its decision. We also believe that the district court decided issues of facts and credibility issues that would be better suited and best left for the jury or the fact finder. Thank you. Thank you. You have reserved some time for rebuttal, three minutes. Now, so I've given the union a tough job. Yes. To argue for both themselves and to the best of your ability for NYCHA. Although we have NYCHA's papers, and of course we're taking those on submission. So proceed, counsel. Good morning. May it please the court, I'm Alexandra Howell. I represent Local 237, IBT, International Brotherhood of Teamsters. I think where I want to begin is with the agreement, the 2010 letter agreement, because there seems to be fundamental misreading of that agreement in a few ways. The first way is that that letter agreement does not provide for prevailing wages, and it couldn't provide for prevailing rate wages for the plaintiffs because neither NYCHA nor the union have the ability to decide whether or not the plaintiffs or all caretakers get prevailing rate wages. Only the New York State Comptroller has that right? Correct. And his delegate has to do that.  My understanding is that the Comptroller's office decides who gets prevailing rate and the titles within NYCHA are created by DCAS. And does the Comptroller look at the functional tasks? Yes, yes. And on that basis, he or she decides the title and therefore the status. Yes. Class. Right, and I believe in the record, I'm not sure of the citation, but the record does have a letter from the Comptroller's office that was sent to the union. So back in 2007, the union actually did ask for prevailing rate wages for plaintiffs, which significantly undermines their duty of fair representation argument, which is a requirement to prove discrimination against the union, as you well know. We did go to the Comptroller's office in 2007, and the Comptroller said, just because you call them plasterer helpers doesn't mean that they function as plasterer helpers in the private sector. You have not established that, which was true, we hadn't. And they didn't function as plasterer helpers in the private sector. They did significantly different work. So the second thing about the letter agreement is that it doesn't provide for a petition to DCAS to get plaintiffs prevailing rate wages. That's not what it says. So no one was required to do that? Well, what we were supposed to do was, to NYCHA and the union, the agreement was to make their best efforts to ask for It would have had them called plasterer helper HA, which is housing authority. That's all it would have done. Because the Comptroller would still have to make that decision based on the function of the task. Correct. And what is absent from the record is any admissible evidence as to what plasterer helpers in the private sector do. The plaintiffs proffered an affidavit to that effect of a person who is not qualified to talk about what plasterer helpers in the private sector do. Merely because he worked as a plasterer helper, we're not sure if he was a prevailing rate plasterer helper, worked on public projects, none of that. In 1990, has nothing to do with what plasterer helpers do in 2018. So that's not admissible evidence. So the other gaping hole in the record is that we don't even, plaintiffs say, we do the same, we do the same, we do the same. But we've never seen any evidence of what private sector plasterer helpers do, so how could you possibly say that you do the same? Maybe the evidence upon which the Comptroller could decide that the jobs were identical. Exactly, exactly. With respect to the duty of fair representation, I think your honors touched upon this a little bit. There is absolutely no record evidence of race discrimination in this case by NYCHA or by the union. Why is that? Merely because there is a statistical disparity between what Mason tenders make in NYCHA and what caretakers P make in NYCHA doesn't make them the same. And not only that, the union did not get for Mason tenders prevailing rate wages and NYCHA did not give Mason tenders prevailing rate wages. Mason tenders have them by the function of the civil service law as we discussed. They are competitive class employees. They take an exam. The caretakers P do not. Provisional appointments would not give plaintiffs prevailing rate wages. It would not make them a civil service title because they would be rank ordered in fitness. And everybody else that took this NYCHA plasterer helper test would be ranked too. So they might not even get an appointment as a plasterer helper in NYCHA making. This is the question I asked opposing counsel that everyone seems to take for granted that only workers in the competitive class under section 44 are entitled to prevailing wages. Is that correct? I believe that is correct. How do I find a citation to that belief? Your honor, I don't have a citation for you for that. Is it just something that we know that's in the ether? Yes. Again, my understanding of the civil service law is just that when you're in a competitive class. You get prevailing wage. You get prevailing wage. You take an exam, not an assessment, an internal NYCHA assessment, but you take an actual exam that determines fitness. So it must say that somewhere in the law. Yes, somewhere. If you wanted to get prevailing wages, you have to be in a competitive class. Yes. But I don't know where that is. I can't give you a citation offhand right now. It's just something that everyone knows? It sounds like something that we've all taken for granted in the case. That's exactly right. Yes. But yes, I can't find a citation. Can I ask you, within a week, and you can convey this also to your NYCHA colleague. Absolutely. Send me a citation that- You can send it to all three of us. I will send it to everybody. That, yes, send it to all three of us, I'm sorry. That explains how you know that only competitive class employees are entitled to prevailing wages. On what basis is this knowledge formed? Okay. Thank you. I will provide that for you. That's no problem. I apologize for not having that cited today for you. No, it's not self-evident from the record that there's any reference to that. It's just like received writ from above. Okay. For all of us. Okay. So the other thing, sorry, I just lost my place here. Okay, so they're required to prove that the union committed a violation of the duty of fair representation. And they say that we committed that breach in three ways. By not enforcing the letter agreement, which I discussed, the fundamental understanding of the letter agreement is the issue there. By not treating similarly situated groups similarly, which is also a problem for the reasons I discussed. And for acquiescing to NYCHA's discrimination. And the acquiescing to NYCHA discrimination is interesting because NYCHA didn't discriminate against plaintiffs either. And that's- NYCHA didn't discriminate. If we find, as the district court did, then the derivative of liability of the union is also not proven. Absolutely, which is why I can sort of speak to NYCHA's discrimination a little bit, because that is part of our case. There is no record evidence whatsoever of race discrimination here. NYCHA- Of the workers in this class of caretaker P, are African American or Hispanic. Is this accidental? How does that happen? There must be some way. How, in NYCHA's hiring practices? My understanding is, again, of NYCHA's hiring practices is very, very limited. But from what I gather, NYCHA frequently hires from people that live within, for this particular job, hires people that live in their properties. And people that live in those properties tend to predominantly be of the same groups that caretakers pay. Additionally- They hire local people, which is a good thing. Yes. But then they don't appear to allow them, or there's no way rationally to allow them to move up the scale to get better jobs and higher wages. I would argue that that is not the case. And as a matter of fact, what the union did was provide them with an opportunity and a path to become plasters, because we could not get them prevailing rate wages as plaster helpers. That was the purpose of this training program, was to give a meaningful opportunity to people that were working as caretaker P's, to allow them to learn the skills to become plasters better than a plaster helper, because you're in charge. And the people that did take advantage of that, I think Mr. Nuesra did discuss, there was some success there with people that succeeded in the training program, took the civil service exam, and became plasters, so there is a path, there's always a path. Plasters, actual plasters, that was actually the purpose of the agreement, was to create a training program because we couldn't get them the title immediately. We wanted to find a way to get them a prevailing rate wage job, and that's what we did. We gave the training program to teach them to be plasterers, to reduce the amount of time it takes to become a plasterer, and some people did succeed in doing that. So there absolutely is a path, and we want nothing more. If they had become plasterers, they then would be entitled to prevailing wage? Yes, because they would have taken the exam, they would be rank ordered in terms of fitness, and they would be hired by NYCHA to do plasterer work. In the time remaining, which is very little, can you affirm that the hierarchy is caretaker P, plasterer helper, and then plasterer? No, there is no plasterer helper. So what is that? Plasterer helper, in NYCHA, is a name that the plaintiffs made up that doesn't exist. Plasterer helper on the outside. We don't have time to find that out. So I know that NYCHA refers to them as plasterer helpers, but their civil service title is caretaker P. So is there a civil service title called plasterer helper? Yes, only in the private sector. Not? Not in NYCHA. That was, right, so- Are caretakers P equivalent? No, that's what we're saying. They're not equivalent, because they don't do the same job, and from the- That's why, in the assessment, they can go from caretakers P to plasterers. Correct. Without stopping off at plasterer helpers. Because they're not plasterer helpers, because there is no such NYCHA title, because DCAS never gave permission to NYCHA to have that title, and the comptroller never determined prevailing wage is applied to that title. Well, that's very helpful. Thank you. Yes, I'm glad. This was a wonderful opportunity. I thank you very much, and I will get you that site. Thank you. Thank you. Thank you very much. Counsel, you have two minutes for- A response that that's the wrong solution. Of course, of course, although I really asked for factual material, but of course, counsel, you can respond to anything. I gave them a week, and I'll give you ten days from today. You have three minutes for rebuttal. Very quickly, Your Honor. See, this is the misnomer. Counsel for the union said that the civil service for a plasterer helper is only given in the private sector. It doesn't make any sense. In order for you to take a civil service test, you have to be a governmental employee. You have to, she said- The fact that it doesn't make sense is not necessarily dispositive, whether it's accurate. Right, but it makes it an issue of fact. It makes it an issue of fact because they don't know, like you alluded to, Your Honor, it is nowhere there. We just take it for granted, and my clients need to make sure that they don't take them for granted any longer. What is it that you think is inaccurate about my discussion with opposing counsel? That the prevailing wages have nothing to do with any competitive exam. For example- That's the question I asked. Exactly. And as I understand it, opposing counsel said that yes, it does. It does not. We all take it for granted, but there is- Exactly. Maybe it's in the prevailing wage law? In the what? The prevailing wage law? Well, it is in labor law subsection 220, which is prevailing in the private industry. That's where it comes from. It's the private industry which has the prevailing wages, and what they do is, if you do the same thing or significantly the same thing in all material respects, then they want the public sector people to also get it. So it doesn't matter whether you take a civil. Also, Your Honor, very important, opposing counsel stood here and made a representation that these people who have been appointed from the, we say plaster helpers, they say caretaker piece, took the civil service test. No, that is not true. They were all appointed provisionally. I can tell you that one- Appointed provisionally, but they have to take the test. They didn't take the test. I thought she was drawing a distinction between the civil service test and an internal assessment that would have allowed some subset possibly to qualify later for the plasterer position. Is that wrong? No, that's not correct, Your Honor. What happened is there were two goals. One goal is that in order for them to get prevailing wages, they have to get on the job training, like most of us lawyers do, especially sole practitioners, right? On the job training, and then take two intermittent assessments, once after six months and once after 12 months. If they pass those two assessments, then they were supposed to become plasterer helpers and get prevailing wages. That is our position. Without taking a competitive exam? That's correct, Your Honor. That's correct. The agreement doesn't say plasterer. What is the source of that belief? The cumulative testimony and sworn statements in the record, Your Honor. I have to point out that the agreement, though, refers to caretaker P. Yeah.  Not plasterer helpers. It follows what counsel was saying about what- I thought it actually said plasterer helper position, the agreement itself. I've heard from opposing counsel that there is no such title in state government. And that's not- in city government? City government. That's not what the comptroller office said in his determination of 1998 regarding the Mason helpers, as well as in the 2000 determination. Let me just point out the exact page because that's- I actually see it. It refers to caretaker P throughout. And then it says NYCHA agrees to use its best efforts to petition the city, DCAS, to create a new plasterer's helper HA title that incorporates- They never did it. And what we're saying is it's almost going to be, in April, eight years. When are they going to do it? So, but you have to agree, though, that if they haven't created such a title, it therefore doesn't exist. Not yet. And so that's- Not yet, but it doesn't exist. It doesn't exist. But for the last seven plus years, they've been doing the same work that the private sector plasterer helpers are doing. They mandated to do it. They have no choice. That's what the evidence shows. That's what the cumulative testimony shows, including, but not limited to, Mr. Floyd, Mr. Marzenik, Mr- I have one question to ask. Yes. Your time has expired, but we never turn to the different standard between on the federal claims and the state claims and the city claims. A standard of proof for discrimination. Yeah, I don't have a state, Your Honor. I have the city. The city. And as this court is aware, in 2004 or 2005, the city council, the city government amended the anti-discrimination, made it more favorable than its counterpart of state and federal. Even if you didn't prevail on the federal claims, you would argue that you still have a chance of prevailing on the city claims. And the district court did not do that analysis. That's correct, but very, very important, Your Honor, and I have it in my reply brief, and I believe in the opening brief as well. Like I stated earlier, and it was astutely pointed out to me, I do have pending Title VII disparate impact. That's different. You don't have to show intentional discrimination, and you can go just by statistics. I do not want to have my clients foregone from at least pursuing that at the district court level. Because, as I mentioned, the standard is different. It's, I believe, much easier to prove than the other counterpart. Thank you. All right. Thank you. Thank you both, and I particularly thank counsel for the union for filling in for the missing counsel. Thank you both, very interesting rule of reserve decision.